UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-01344-NYW-NRN

CARL SEVER,

    Plaintiff,

v.

CITY OF FORT COLLINS, and
JASON HAFERMAN,

    Defendants.

## ORDER ON MOTION TO DISMISS

This matter comes before the Court on Defendants City of Fort Collins, Sergeant Allen Heaton, and "Corporal" Jason Bogosian's[1] Motion to Dismiss Plaintiff's Amended Complaint (ECF 29-1) Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Qualified Immunity ("Motion to Dismiss" or "Motion") [Doc. 33, filed October 9, 2023]. Plaintiff Carl Sever ("Plaintiff" or "Mr. Sever") has responded in opposition [Doc. 40], and Defendant City of Fort Collins ("Defendant" or "the City") has replied [Doc. 50]. The Court finds that oral argument would not materially assist in the disposition of the Motion to Dismiss. Upon review of the Motion and the related briefing, the applicable case law, and the entire docket, the Motion to Dismiss is respectfully **DENIED**.[2]

---

[1] Plaintiff identifies Jason Bogosian as a Corporal in the Amended Complaint. *See* [Doc. 45]. For purposes of consistency, this Court continues to refer to him as "Corporal Bogosian."

[2] Another court within the District of Colorado recently ruled on motions to dismiss in two cases involving similar facts and claims against the same defendants. *See Cunningham v. Fort Collins*, 23-cv-01342-CNS-SBP, 2024 WL 1281514 (D. Colo. Mar. 26, 2024);

## BACKGROUND

The following facts are drawn from the operative First Amended Complaint and Jury Demand ("Amended Complaint"), [Doc. 45], and the Court presumes they are true for the purposes of the Motion to Dismiss. Plaintiff Carl Sever brings this civil action against the City of Fort Collins and former Fort Collins Police Services ("FCPS") Officer Jason Haferman ("Officer Haferman") for alleged violations of his state and federal constitutional rights. *See generally* [*id.*].

### I. Mr. Sever's DUI Arrest

On the evening of July 23, 2021, Officer Haferman observed Plaintiff taking what he considered a "wide turn" out of the parking lot of a gym. [Doc. 45 at ¶¶ 50–51]. Officer Haferman, driving an unmarked police vehicle, followed Plaintiff for a mile before initiating a traffic stop. [*Id.* at ¶¶ 51, 53]. Plaintiff was driving 30 miles per hour in a 40 mile per hour zone when Officer Haferman pulled him over. [*Id.* at ¶¶ 52–53]. Plaintiff had his wallet out and window rolled down when Officer Haferman approached his vehicle. [*Id.* at ¶ 54]. When Officer Haferman asked whether Mr. Sever knew why he was being pulled over, and Mr. Sever responded that he did not, Officer Haferman stated that it was because Mr. Sever was "going about 10 miles under the speed limit." [*Id.* at ¶ 55]. Mr.

---

*Erbacher v. Fort Collins*, 23-cv-01341-CNS-NRN, 2024 WL 1701762 (D. Colo. Apr. 19, 2024). The Court notes substantial overlap in the pleadings and arguments contained in the parties' briefing of the motions to dismiss in *Cunningham*, *Erbacher*, and the instant case. *Compare* [Doc. 33; Doc. 40; Doc. 45; Doc. 50], *with Cunningham*, ECF Nos. 5, 19, 42, 49, *and Erbacher*, ECF Nos. 33, 40, 48, 54. While this Court is not bound by those decisions, *see United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) ("[D]istrict courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts."), this Court notes that the *Cunningham*/*Erbacher* court denied the City's motion to dismiss in each case and this Court finds its analysis persuasive.

2

Sever collected his license, insurance, and registration to provide to Officer Haferman. [*Id.* at ¶ 56].

Even though Mr. Sever had not consumed alcohol in several years, Officer Haferman falsely stated in his arrest report that he smelled alcohol on Plaintiff's breath during this encounter. [*Id.* at ¶ 59]. Footage from Officer Haferman's body-worn camera (or "BWC") shows that Plaintiff appeared sober and moved like a "normal" 74-year-old. [*Id.* at ¶ 61]. Upon receiving Plaintiff's documents, Officer Haferman returned to his patrol car and called for a cover officer so that Officer Haferman could put Plaintiff through roadside tests. [*Id.* at ¶ 62].

When the cover officer arrived, Officer Haferman immediately muted the microphone on his BWC before walking back to Plaintiff. [*Id.* at ¶ 63]. Officer Haferman kept his microphone muted for the duration of his encounter with Plaintiff. [*Id.*]. However, audio from some portions of the encounter was captured by the cover officer's BWC, including Officer Haferman's request for Plaintiff to exit his vehicle to answer questions. [*Id.* at ¶ 64].

Mr. Sever exited his vehicle "normally and without indication of impairment." [*Id.* at ¶ 65]. Officer Haferman asked Mr. Sever why his driving history indicated that his license had been cancelled for physical disability for a period several years prior; whether Mr. Sever was taking any medications; and whether Mr. Sever had ever smoked marijuana. [*Id.* at ¶¶ 66–70]. Mr. Sever explained that, several years ago, he sustained a traumatic brain injury in a car accident and his doctor was required to submit a medical cancellation of his driving privilege while Mr. Sever was recovering. [*Id.* at ¶ 66]. Mr. Sever also told Officer Haferman that he had consumed two prescribed, non-impairing

3

medications that day, both of which Mr. Sever had taken for years without issue. [*Id.* at ¶ 69]. Mr. Sever explained that he used marijuana for medical purposes at night to help him sleep and noted that he had last smoked the previous evening. [*Id.* at ¶ 70].

Officer Haferman proceeded to administer roadside tests to Mr. Sever.[3] [*Id.* at ¶ 72]. The National Highway Traffic Safety Administration's manual on roadside tests specifically trains officers that roadside test maneuvers are not validated for detection of impairment in people over 65 years of age. [*Id.* at ¶ 77]. Even so, Officer Haferman administered balancing tests to 74-year-old Mr. Sever. [*Id.* at ¶ 76]. When Mr. Sever needed to put his foot down during the one-leg stand maneuver, Officer Haferman asked, "any reason why that one is so difficult for you?" [*Id.* at ¶ 78]. Mr. Sever reminded Officer Haferman that Mr. Sever sustained a traumatic brain injury affecting his balance. [*Id.* at ¶ 79]. Mr. Sever also explained that he recently had his right knee scoped and was unable to put much pressure on it without pain. [*Id.* at ¶ 82].

Although Mr. Sever performed well on the balancing maneuvers and tests for a 74-year-old man with disabilities, [*id.* at ¶ 76], Officer Haferman ultimately arrested Mr. Sever for suspicion of DUI, [*id.* at ¶ 90]. After driving Mr. Sever to the hospital for a blood draw, Officer Haferman booked him into jail. [*Id.* at ¶¶ 102–03]. Mr. Sever spent that night in jail; was released at 6:00 a.m. the following day; and had to walk 4.5 miles to retrieve his car. [*Id.* at ¶ 105]. On November 9, 2021, the results of the blood tests confirmed that Mr. Sever's blood was negative for alcohol and negative for impairing drugs. [*Id.* at ¶ 111]. The district attorney dismissed the DUI charge against Mr. Sever after receiving the blood

---

[3] While Plaintiff is referred to as "Mr. Erbacher" in Paragraph 72, the surrounding context indicates that the factual averment pertains to Mr. Sever. *See generally* [Doc. 45 at ¶¶ 50–113].

4

results. [*Id.* at ¶ 112].

## II. Officer Haferman's Pattern of Wrongful DUI Arrests

Plaintiff alleges that his arrest was but one example of an ongoing pattern of wrongful DUI arrests. *See generally* [Doc. 45]. Officer Haferman began working for FCPS as a patrol officer in 2017. [*Id.* at ¶ 13]. As part of his FCPS onboarding, Officer Haferman received training on the proper administration of Standardized Field Sobriety Tests ("SFSTs"). [*Id.* at ¶ 23]. Once on patrol, Officer Haferman accumulated such a high volume of DUI arrests that, in 2020, FCPS promoted him to DUI Officer—a role in which the officer's exclusive focus is performing traffic stops and investigating DUI-related offenses. [*Id.* at ¶¶ 14, 16]. Six months into his DUI Officer tenure, Officer Haferman's DUI arrest numbers were significantly higher than those of any other DUI Officer to precede him in FCPS's history. [*Id.* at ¶ 39]. At least as early as 2021, however, Officer Haferman was performing DUI stops and administering SFSTs to subjects in a manner inconsistent with his training, and in a manner designed to create a false impression of the subject's intoxication when described in his arrest reports. [*Id.* at ¶ 23]. More broadly, the defects in Officer Haferman's DUI investigations and arrests commonly included:

- Interpreting normal, innocuous human behaviors as "clues of impairment" when, in fact, his training instructed the opposite;

- Relying on certain made-up clues of impairment not taught in any SFST training (and claiming that those non-clues were simply the product of "advanced techniques");

- Administering the Horizontal Gaze Nystagmus ("HGN") test to subjects incorrectly, and then citing his observations during botched HGN tests to support his arrest decisions;

- Writing arrest reports containing exaggerations and falsehoods regarding clues of impairment he had observed, which were clearly belied by his own body-worn camera footage; and

5

- Muting and deactivating his body-worn camera during citizen contacts and arrests, in violation of both FCPS policy and Colorado law.

[*Id.* at ¶¶ 24–26, 30].  Many of these defects were readily observable on Officer Haferman's body-worn camera recordings of DUI stops.  *See* [*id.* at ¶ 27].  However, no one at FCPS ever watched his BWC footage or otherwise reviewed his performance on DUI stops to ensure that those stops were conducted according to FCPS training and policy.  *See, e.g.*, [*id.* at ¶¶ 27–28, 34–35, 38, 41–42].

Mr. Sever's Amended Complaint details 15 DUI arrests made between January 2021 and April 2022 (aside from his own) in which (i) Officer Haferman used DUI investigation techniques that failed to conform with his training, (ii) the subjects' blood or breath testing came back "negative" or "presumptively unimpairing" for alcohol and drugs, and (iii) dismissals or acquittals of the subjects' DUI charges resulted.  [*Id.* at ¶¶ 31 (C.B.),[4] 37 (Harley Padilla), 43 (G.C.), 44 (R.B.), 45 (Cody Erbacher), 114 (Jesse Cunningham), 115 (B.C.), 116 (K.S.), 117 (D.A.), 118 (G.E.), 119 (S.J.), 120 (Harris Elias), 121 (L.M.), 122 (Carly Zimmerman), 123 (Derrick Groves)].  Although FCPS maintained publicly that it "always conduct[s] an internal review of any DUI arrest made by one of its officers that has chemical test results come back negative for drugs/alcohol," *see* [*id.* at ¶¶ 33, 116, 119, 139], no such review appears to have been conducted by FCPS in any of the above-listed cases until well after Officer Haferman's conduct became the subject of media attention.  Meanwhile, by the end of 2021, FCPS had made 504 DUI arrests; of those, Officer Haferman was involved in 191, or nearly 40%.  [*Id.* at ¶ 125].

In April 2022, Fox 31 Denver received a tip about Officer Haferman, and reporters

---

[4] It is unclear from the Amended Complaint whether the DUI charge against C.B. ultimately resulted in acquittal or dismissal.  *See generally* [Doc. 45 at ¶¶ 31–36].

at multiple outlets began investigating his pattern of wrongful DUI arrests. *See* [*id.* at ¶¶ 128, 137, 143]. Around that time, Officer Haferman also became the subject of an internal affairs investigation at FCPS. *See* [*id.* at ¶ 163]. During an interview with FCPS's Professional Standards Unit, Officer Haferman stated that throughout his tenure as DUI Officer, he "believed he was doing good work," and "didn't have any reason to believe he wasn't doing good work based on no supervisors or experts in the field saying otherwise." [*Id.* at ¶ 167]. In September 2022, the Larimer County DA informed FCPS that Officer Haferman's behavior "has demonstrated a significant disregard for the integrity of his investigations." *See* [*id.* at ¶ 171]. The next day, FCPS placed Officer Haferman on administrative leave. [*Id.* at ¶ 172]. In December 2022, FCPS announced that Officer Haferman had resigned, and explained that FCPS's internal review had revealed that Officer Haferman had been making false statements in his arrest reports, performing SFSTs incorrectly, and arresting subjects on DUI-related offenses without probable cause. [*Id.* at ¶ 173].

On May 3, 2023, Plaintiff initiated this lawsuit against the City, Officer Haferman, Sergeant Allen Heaton ("Sergeant Heaton"), and "Corporal Redacted," later identified as Jason Bogosian ("Corporal Bogosian") in Larimer County District Court. [Doc. 5]. Pertinent here, Mr. Sever's Amended Complaint includes a § 1983 claim against the City, alleging *Monell* liability for failure to train and supervise FCPS personnel, including Officer Haferman, in lawful DUI arrest protocols. [Doc. 45 at ¶¶ 208–16]. The City removed the action to this Court on May 26, 2023. [Doc. 1]. Officer Haferman answered the Amended Complaint on October 6, 2023. *See* [Doc. 32].

On October 9, 2023, the City filed its Motion to Dismiss, arguing that Plaintiff fails

7

to state a claim under Rule 12(b)(6) against the City, Sergeant Heaton, or Corporal Bogosian.  *See generally* [Doc. 33].  In his Response to the Motion to Dismiss, Plaintiff indicated his intent to dismiss Sergeant Heaton and Corporal Bogosian from this action. [Doc. 40 at 2].  Consistent with this position, Mr. Sever filed Notices of Voluntary Dismissal with respect to Sergeant Heaton and Corporal Bogosian on December 6, 2023.  *See* [Doc. 42; Doc. 43].  Plaintiff has responded in opposition to the Motion, *see* [Doc. 40], and the City has since replied, [Doc. 50].  The remaining issue as to whether Plaintiff has adequately pleaded municipal liability against the City is thus ripe for adjudication.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible." (quotation omitted)). The Court must ultimately "determine whether the complaint sufficiently alleges facts

supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

The City argues in its Motion to Dismiss under Rule 12(b)(6) that Plaintiff's allegations are insufficient to establish the City's liability for Officer Haferman's actions; specifically, the City contends that Plaintiff fails to allege sufficient facts to state a claim for municipal liability. *See* [Doc. 33 at 11–13]. Plaintiff disagrees, asserting that his allegations are sufficient to establish the City's liability. [Doc. 40]. The Court addresses the Parties' arguments below.

**I.    Standard for Municipal Liability for Constitutional Torts**

Under 42 U.S.C. § 1983, local government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. To state a claim for § 1983 liability against a municipality (often referred to as "*Monell* liability"), a plaintiff must allege (1) an "official policy or custom" (2) caused his constitutional injury, and (3) the policy or custom was "enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citation omitted).

9

>A municipal policy or custom can take the form of:
>
>(1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations and citations omitted).

## II.     Plaintiff's Municipal Liability Claim

Plaintiff's § 1983 claim revolves largely around the City's failure to supervise Officer Haferman, or to take corrective action after he repeatedly executed DUI arrests without probable cause.  In seeking dismissal, the City does not argue that Plaintiff has failed to allege a constitutional violation, *see generally* [Doc. 33], but instead argues that the Amended Complaint contains insufficient factual allegations to establish *Monell* liability based upon FCPS's failure to train or supervise Officer Haferman in the performance of his DUI Officer duties.  [*Id.* at 11–13]; *see also* [Doc. 50 at 6–8].  The Court respectfully disagrees.

In asserting that Plaintiff has not plausibly alleged a failure to train or supervise, Defendant appears to advance three arguments:  (1) Plaintiff has failed to allege facts demonstrating that any particular policy or custom was enacted or maintained with deliberate indifference to almost inevitable constitutional injury, [Doc. 33 at 13]; (2) Plaintiff has not plausibly alleged any particular deficiency in the City's training or supervision program, [Doc. 50 at 8]; and (3) Plaintiff fails to allege how the City was aware

of Officer Haferman's "propensity for wrongfully arresting citizens to increase his DUI arrest numbers by falsifying his reports," sufficient to put the City on notice of any unconstitutional conduct, [Doc. 33 at 12]. For the reasons that follow, the Court finds that Plaintiff's Amended Complaint sets forth facts sufficient to plausibly establish each element of his failure-to-supervise claim of municipal liability.[5]

**Policy of Deficient Supervision.** The "official policy or custom" requirement is intended to distinguish "acts of the municipality from acts of employees of the municipality," making clear that municipal liability is limited to actions "for which the municipality is actually responsible." *Cacioppo v. Town of Vail*, 528 F. App'x 929, 932 (10th Cir. 2013) (quotation and emphasis omitted).

The City cites no case holding that municipal liability for a failure to supervise cannot be based on repeated incidents of DUI arrests without probable cause perpetrated by a single officer. "The fact that a single officer is the subject of a large number of [unlawful arrest] complaints, in and of itself, creates a reasonable need to review the officer's performance to determine the legitimacy of the complaints and what may be necessary to correct any improper [arrests]." *Zartner v. City & Cnty. of Denver*, 242 F. Supp. 3d 1168, 1174 (D. Colo. 2017). Similarly, "[a] clear pattern or history of a single

---

[5] The Court does not analyze the sufficiency of the Amended Complaint based on other theories of *Monell* liability—e.g., formal or informal policy, decisions of final policymakers, or ratification—because the City did not challenge the Amended Complaint on those bases until its Reply brief. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (noting that courts generally consider issues raised for the first time in a reply brief to be waived); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (same); see also *Pub. Serv. Co. of Colo. v. Bd. of Cnty. Comm'rs of San Miguel Cnty.*, No. 04-cv-01828-REB-CBS, 2006 WL 8454233, at *1 (D. Colo. Jan. 27, 2006) ("[I]t is inequitable and improper for a party, although raising the bare bones of an argument in its opening brief, to reserve a fully developed presentation of that argument for the reply, when the opposing party has no meaningful opportunity to respond.").

officer's DUI charges being dismissed for lack of probable cause may demonstrate a high likelihood of similar future unconstitutional DUI arrests unless that officer is supervised differently." *Erbacher v. Fort Collins*, 23-cv-01341-CNS-NRN, 2024 WL 1701762, at *6 (D. Colo. Apr. 19, 2024). "A failure to take corrective action in the face of such a pattern of conduct suggests a deficiency in supervision." *Zartner*, 242 F. Supp. 3d at 1175.

Here, the sheer volume of DUI charges originating from Officer Haferman that were allegedly dismissed after chemical testing came back negative for any drugs or alcohol alone suggests the need for review of his performance during DUI arrests and implementation of any necessary corrective measures. Yet, despite FCPS's insistence that it "always conduct[s] an internal review of any DUI arrest made by one of its officers that has chemical test results come back negative for drugs/alcohol," *see, e.g.*, [Doc. 45 at ¶¶ 33, 147], there was no record that FCPS conducted any formal internal review of the 15 defective DUI arrests identified in the Amended Complaint (and in some instances, there was no record that FCPS conducted *any* type of review of the defective DUI arrest) until after Officer Haferman's internal affairs investigation was opened, *see* [*id.* at ¶¶ 31, 37, 43–46, 115, 139–47]. According to the Amended Complaint, had FCPS timely performed this review, Officer Haferman's pattern of conducting SFSTs incorrectly and making arrests without probable cause would have been readily apparent in his body-worn camera footage and would have prompted remedial action. *See* [*id.* at ¶¶ 27, 173]. The Amended Complaint further alleges that FCPS had received other warning signs about Officer Haferman's deficient performance—including that the Larimer County DA had several "previous discussions" with FCPS about the quality of Officer Haferman's DUI investigations, [*id.* at ¶ 171], and that Corporal Bogosian had noticed Officer Haferman

performing SFSTs incorrectly, [*id.* at ¶ 30]—yet FCPS did not effectively intervene or re-train him to prevent further baseless DUI arrests, [*id.* at ¶¶ 34, 199, 201, 206].

Thus, the City's "failure to take corrective action in the face of Officer Haferman's pattern of meritless DUI arrests plausibly states a 'policy' of deficient supervision." *Erbacher*, 2024 WL 1701762, at *6. Accordingly, the Court finds that Plaintiff adequately states a claim that the City had a custom or policy involving inadequate supervision of police officers for *Monell* purposes. *See Zartner*, 242 F. Supp. 3d at 1174–76 (denying motion to dismiss failure-to-supervise claim premised on excessive force complaints concerning one officer); *Vann v. City of N.Y.*, 72 F.3d 1040, 1051 (2d Cir. 1995) (focusing on the supervision of a particular problem officer and finding that summary judgment for the city was inappropriate where the evidence showed an "absence of any significant administrative response to [the problem officer's] resumption of his abusive misconduct upon reinstatement").

**Causation.** The causation element of a *Monell* liability claim is "applied with especial rigor" when based upon "inadequate training, supervision, and deficiencies in hiring." *Schneider*, 717 F.3d at 770 (quotation omitted). A plaintiff must plausibly allege "a direct causal link between the policy or custom and the injury alleged." *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quotation omitted); *accord Bryson*, 627 F.3d at 788; *Schneider*, 717 F.3d at 770. Defendant asserts that the Amended Complaint lacks allegations sufficient to plausibly establish that "the City's actions (or failure to act) was substantially certain to result in a violation of Plaintiff's constitutional rights." [Doc. 33 at 13 (emphasis omitted)]. The Court respectfully disagrees. Construing the facts alleged in the Amended Complaint in the light most

favorable to Plaintiff, the Court finds that the Amended Complaint plausibly alleges the causation element of his *Monell* liability claim against the City.

As set forth above, Mr. Sever has adequately alleged a policy of deficient supervision. And "[a] sustained pattern of [unconstitutional arrests by] one officer that does not result in discipline or correction . . . makes the probability of another violation more likely." *Zartner*, 242 F. Supp. 3d at 1176. Here, Plaintiff alleges a "sustained pattern" of DUI arrests made without probable cause by Officer Haferman, and the City's alleged failure to take disciplinary or corrective action increased the likelihood of future violations by Officer Haferman. *See id.* This is sufficient at the pleadings stage in this case to demonstrate causation.

**Deliberate Indifference.** For claims of inadequate supervision, a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Waller*, 932 F.3d at 1284 (quotation omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 390 (1989). To show deliberate indifference, a plaintiff must allege that "the need for more or different supervision . . . is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy of the city can be said to have been deliberately indifferent to the need." *Brown v. Gray*, 227 F.3d 1278, 1291–92 (10th Cir. 2000) (brackets omitted). "The need for more or better supervision . . . may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Zartner*, 242 F. Supp. 3d at 1175 (brackets and quotation omitted).

Defendant argues that "a pattern of 'similar constitutional violations' has actually

14

not been properly pled" by Mr. Sever because the Amended Complaint lacks "any reference to the fact there has yet to be a determination *any* of the cited individual's constitutional rights were violated." [Doc. 50 at 7]. Respectfully, the Court is not persuaded by Defendant's argument.

First, the City cites no authority for the proposition that a plaintiff cannot "properly" plead a pattern of "similar constitutional violations" without "determination[s]" that the "similar" incidents were, in fact "constitutional violations." See [*id.*]; *see also Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986) ("Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had [committed constitutional violations]."). And the authority cited by the City is readily distinguishable from the circumstances presented here. *See, e.g.*, *Schneider*, 717 F.3d at 765 (affirming summary judgment on *Monell* claim involving three incidents of improper sexual contact by officer where, at the time of the plaintiff's assault, one of the two previous incidents was known to police department); *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1208 (D. Colo. 2020) (dismissing *Monell* claim focused on singular incident for failure to allege specific facts regarding the officers' training and for failure to allege facts regarding a pattern of similar conduct); *Hernandez v. City & Cnty. of Denver*, No. 21-cv-01538-PAB-MEH, 2022 WL 3597452, at *7 (D. Colo. Aug. 23, 2022) (dismissing *Monell* claim where allegations of four incidents of use of excessive force were separated by 13 years and involved other officers, which did not show a pattern of similar constitutional violations). Here, the Amended Complaint alleges multiple examples of Officer Haferman wrongfully arresting individuals for meritless DUIs—including several examples that occurred prior to Mr.

15

Sever's DUI arrest.  *See* [Doc. 45 at ¶¶ 20–21, 37, 43–45].

Second, the Amended Complaint alleges a variety of other warning signs, including 15 cases where courts found that arrests were not supported by probable cause or prosecutors voluntarily dismissed the charges, *see* [Doc. 45 at ¶¶ 21, 37(n), 43(c), 44(c), 45(d), 112, 114(y), 115(j), 116(d), 117(e), 118(f), 119(e), 121(c), 122(e), 123]; multiple DUI arrests involving Officer Haferman that should have triggered an automatic internal review under FCPS policy because blood tests for alcohol and impairing drugs found "none detected," [*id.* at ¶¶ 45(c), 112, 114(x), 116(e), 118(c), 123]; multiple complaints from the Larimer County DA regarding Officer Haferman, [*id.* at ¶ 171]; and observation by Corporal Bogosian that Officer Haferman applied substandard SFST techniques, [*id.* at ¶¶ 29–30].  The Amended Complaint alleges that, despite these warning signs, the City failed to meaningfully review Officer Haferman's DUI arrest reports or BWC footage, implement remedial training requirements for Officer Haferman, or otherwise intervene to prevent future wrongful DUI arrests.

Accordingly, the Court finds that Plaintiff has adequately pled facts at this stage to support a claim that the City was deliberately indifferent to an obvious risk of unconstitutional action by Officer Haferman.  *See Zartner*, 242 F. Supp. 3d at 1174–75 (denying motion to dismiss failure-to-supervise claim where plaintiff pointed to a large number of excessive force complaints against single officer, statements from a supervising officer regarding "warning signs" about the officer, and references to settlements reached between the defendant city and other persons who complained that their constitutional rights had been violated by the same officer).  The Motion to Dismiss is thus **DENIED**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendants City of Fort Collins, Sergeant Allen Heaton, and "Corporal" Jason Bogosian's Motion to Dismiss Plaintiff's Amended Complaint (ECF 29-1) Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Qualified Immunity [Doc. 33] is **DENIED.**

DATED: July 9, 2024

BY THE COURT:

Nina Y. Wang
United States District Judge