**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-01344-NYW-NRN

CARL SEVER,

      Plaintiff,

v.

CITY OF FORT COLLINS, and
JASON HAFERMAN,

      Defendants.

_____

**OMNIBUS ORDER ON EVIDENTIARY MOTIONS**
_____

Pending before the Court are two evidentiary motions, one filed by Defendant City of Fort Collins ("City") and the other filed by Defendant Jason Haferman ("Officer Haferman"):

(1)     Defendant City of Fort Collins' Motion to Strike Plaintiff's Expert Dan Corsentino Pursuant to Fed. R. Evid. 702 ("Motion to Strike Corsentino") [Doc. 86, filed February 7, 2025];[1] and

(2)     Defendant Jason Haferman's Fed. R. Evid. 702 Motion to Exclude Parts of Expert Testimony of Plaintiff's Expert Witness Dr. Lance Platt ("Motion to Exclude Platt," and collectively with the Motion to Strike Corsentino, "Motions") [Doc. 87, filed February 7, 2025].

_____

[1] Where the Court refers to the filings made in Electronic Case Files ("ECF") system in this action, it uses the convention [Doc. ___].  When the Court refers to filings made in another action, it uses the convention ECF No. __.  In both instances, the Court cites to the page number as assigned by the ECF system.

Plaintiff has responded to the Motions, [Doc. 93; Doc. 95], the City has replied, [Doc. 96], and Officer Haferman has replied, [Doc. 103]. The Court has reviewed the Parties' briefs; Dan Corsentino's ("Mr. Corsentino") report ("Corsentino Report"), [Doc. 88]; and Dr. Lance Platt's ("Dr. Platt") report ("Platt Report"), [Doc. 87-1 at 23–34]. The Motions are thus ripe for review. The City has requested an evidentiary hearing on the Motion to Strike Corsentino. [Doc. 86 at 15]. Upon review of the Motions, this Court respectfully concludes that oral argument would not materially assist in the resolution of either Motion.[2] For the reasons set forth herein, the Motion to Strike Corsentino is respectfully **DENIED** and Motion to Exclude Platt is respectfully **GRANTED in part** and **DENIED in part**.[3]

---

[2] Rule 104 requires a hearing on preliminary questions of admissibility in civil cases "when justice so requires." Fed. R. Evid. 104(c)(3). "[W]hile a party may request a *Daubert* hearing, it is within the Court's discretion to determine whether a hearing is necessary." *A.R. ex rel. Pacetti v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 12-cv-02197-RM-KLM, 2013 WL 5463518, at *10 (D. Colo. Sept. 30, 2013). The Court does not find a hearing necessary to resolve the Motion to Strike Corsentino.

[3] The Court takes judicial notice that another court within the District of Colorado in a case involving similar facts and claims against the same defendants recently denied a motion brought pursuant to Rule 702 of the Federal Rules of Civil Procedure challenging Mr. Corsentino. *See Elias v. City of Fort Collins*, No. 23-cv-01343-GPG-KAS (D. Colo.), ECF No. 14. While this Court is not bound by the decision in *Elias*, *see United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) ("[D]istrict courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts."), this Court finds its analysis persuasive. The Court further takes notice that Defendants have filed substantially similar motions in both *Cunningham v. Fort Collins*, No. 23-cv-01342-CNS-SBP (D. Colo.), ECF No. 79; ECF No. 80, and *Erbacher v. Fort Collins*, No. 23-cv-01341-CNS-NRN (D. Colo.), ECF No. 109. The parties in the *Erbacher* action recently settled, thereby causing the court to moot that pending motion to strike Mr. Corsentino. *Erbacher*, ECF No. 116; ECF No. 117; ECF No. 118. The motions to strike Mr. Corsentino and Mr. Platt remain pending in *Cunningham*. *Cunningham*, ECF No. 79; ECF No. 80.

## BACKGROUND

The facts of this case have been previously discussed in detail in the Court's prior Order on the Motion to Dismiss, *see* [Doc. 71], and therefore, are only set forth herein to the extent pertinent to the instant Motions.   This action arises from Officer Haferman's arrest of Plaintiff Carl Sever ("Plaintiff" or "Mr. Sever"), which occurred on July 23, 2021. [Doc. 45 at ¶ 50].   At 6:45 p.m., Officer Haferman observed Mr. Sever taking a wide turn out of a gym parking lot.   [*Id.* at ¶ 51].   Officer Haferman followed Mr. Sever for a mile and pulled Mr. Sever over without observing any signs of impairment.   [*Id.*].   Officer Haferman asked Mr. Sever several questions, to which Mr. Sever had no trouble responding.   [*Id.* at ¶ 58].   Eventually, after asking Mr. Sever about his medications, [*id.* at ¶¶ 67–69], accusing Mr. Sever of smelling of alcohol, [*id.* at ¶ 71], and administering roadside tests, [*id.* at ¶ 76], Officer Haferman arrested Mr. Sever for driving under the influence ("DUI"), [*id.* at ¶ 90].   Mr. Sever claims that Defendants' violations of his constitutional rights have caused him to suffer damages, trauma, and various forms of emotional distress.   [*Id.* at ¶ 177].

This action followed.   Plaintiff filed suit in Larimer County District Court.   [Doc. 5]. The City removed the action to the United States District Court for the District of Colorado on May 26, 2023.   [Doc. 1].   Plaintiff filed the Amended Complaint on September 22, 2023, raising claims for:   (1) arrest without probable cause, [Doc. 45 at ¶¶ 178–89]; (2) failure to supervise/train under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), [Doc. 45 at ¶¶ 190–216;[4] (3) malicious prosecution under the

---

[4] Plaintiff initially asserted his claim for failure to supervise/train against all Defendants named in the suit.   [Doc. 45 at ¶¶ 190–216].   However, Jason Bogosian and Allen Heaton were dismissed from this action upon Plaintiff's Notice of Voluntary Dismissal of

Colorado Constitution, [*id.* at ¶¶ 217–25]; and malicious prosecution under 42 U.S.C.

§ 1983, [*id.* at ¶¶ 226–32].

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience,
training, or education may testify in the form of an opinion or otherwise if the
proponent demonstrates to the court that it is more likely than not that:

(a)     the expert's scientific, technical, or other specialized knowledge will
help the trier of fact to understand the evidence or to determine a fact
in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert's opinion reflects a reliable application of the principles
and methods to the facts of the case.

Fed. R. Evid. 702.  It is well established that trial courts are charged with the responsibility

of acting as gatekeepers to ensure that expert testimony or evidence admitted is not only

relevant, but also reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52

(1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993).  To fulfill that

gatekeeper function, courts within the Tenth Circuit conduct a two-part inquiry.  First,

courts consider whether the expert's proffered testimony has a reliable basis in the

knowledge and experience of his or her discipline by assessing the expert's qualifications

and the admissibility of the proffered evidence, i.e., whether the reasoning or

methodology underlying the testimony is reliable.  *Cook v. Rockwell Int'l Corp.*, 580 F.

Supp. 2d 1071, 1082 (D. Colo. 2006).  Second, courts look at whether the proposed

---

Defendant Jason Bogosian, [Doc. 42], and Notice of Voluntary Dismissal of Defendant
Allen Heaton, [Doc. 43].

testimony is sufficiently relevant to the issues presented to the factfinder.  *See id.*  The party offering the expert opinion bears the burden of establishing its admissibility, including all foundational requirements, by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009) (en banc); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).  To that end, courts consider the following non-exhaustive factors in analyzing whether a particular expert opinion meets the requirements of Rule 702, *Daubert*, and their progeny:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id.*  The analysis is opinion-centric, rather than expert-centric.  *See Crabbe*, 608 F. Supp. 2d at 1221.

Additionally, an expert witness's testimony may not usurp the court's province by providing legal opinions.  *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).  It is also settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  Although the line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, testimony that "articulates the ultimate principles of law governing the deliberations of the jury" is inadmissible.  *Specht*, 853 F.2d at 808.  The trial court retains broad discretion in deciding whether to admit or exclude expert testimony.  *See Werth v. Makita Elec. Works, Ltd.*,

5

950 F.2d 643, 647 (10th Cir. 1991) (noting that a trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

## ANALYSIS

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has routinely permitted expert testimony regarding whether departmental policies and procedures comply with nationally accepted practices when the case involves a question of municipal liability. *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 742–43 (10th Cir. 1993) (affirming the district court's admittance of expert testimony on generally accepted police customs and practices); *cf. Allen v. Muskogee*, 119 F.3d 837, 842–43 (10th Cir. 1997) (concluding that expert testimony on adequacy of police training was sufficient to support a jury's verdict on municipal liability); *Brown v. Gray*, 227 F.3d 1278, 1287 (10th Cir. 2000) (citing, approvingly, the district court's admission of expert testimony that city's training was inadequate). In *Zuchel*, the Tenth Circuit held that the district court did not err when it permitted an expert to testify that standards of the Denver Police Department fell below "generally accepted police custom and practice." 997 F.2d at 742–43. The Tenth Circuit noted that "[c]ourts generally allow experts in [the area of criminal justice, police training, police tactics, and deadly force] to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement." *Id.* at 742.

Against this backdrop, the Court now turns to consideration of each Motion.

## I. Motion to Strike Corsentino

Plaintiff has endorsed Mr. Corsentino as a retained expert in the field of police supervision and training. *See* [Doc. 93 at 3; Doc. 88]. Mr. Corsentino is a former law enforcement professional with 25 years of experience, including service as the Sheriff of

Pueblo County for 17 years and as the Police Chief in Fountain, Colorado. [Doc. 88 at 4]. The City seeks to exclude the entirety of Mr. Corsentino's opinions but highlights three in particular: (1) Sargeant Allen Heaton ("Sargeant Heaton") and Corporal Jason Bogosian ("Corporal Bogosian") failed to properly supervise Officer Haferman,[5] [Doc. 86 at 4–5 (citing [Doc. 88 at 22])]; (2) the "recurring pattern of wrongful arrests and ethical lapses attributed to Officer Haferman raises serious concerns about [the Fort Collins Police Department's ("FCPS")] training protocols, supervision mechanisms, and ethical standards enforcement," [*id.* at 5 (citing [Doc. 88 at 22])]; and (3) Sergeant Heaton failed to properly address critical deficiencies in Officer Haferman's police reports and failed to effectively conduct internal investigations into Officer Haferman's performance, [*id.* (citing [Doc. 88 at 22–23])].[6]

The City does not challenge Mr. Corsentino's professional qualifications as an expert. *See* [*id.*]. Instead, it argues that the Court should exclude Mr. Corsentino's in its entirety for three reasons: (1) Mr. Corsentino's opinions are not reliable, [Doc. 86 at 10–

---

[5] Specifically, Mr. Corsentino opined that Sergeant Heaton and Corporal Bogosian did not properly supervise Officer Haferman because, inter alia, they failed to: (1) review Officer Haferman's written reports; (2) review body-worn camera footage; (3) review results of blood tests; (4) randomly and systematically follow up with arrestees who made complaints about Officer Haferman; (5) communicate with the District Attorney on the status of certain cases based on the volume of DUI arrests Officer Haferman was involved in; (6) notify Command Staff, specifically the Chief of Police, that there was a pattern of behavior developing in their DUI enforcement section; (7) properly train Officer Haferman on DUI enforcement; and (8) ride along with Officer Haferman to assess how he established probable cause for a traffic stop. [Doc. 86 at 4–5 (citing [Doc. 88 at 22])].

[6] Mr. Corsentino further opined that: "[T]he supervisory roles of Sergeant Allen Heaton in particular come[] under scrutiny, due to his apparent lapses in addressing critical deficiencies in [Officer] Haferman not having accurate and detailed police reports, and it does not appear that [Sergeant] Heaton handled internal affairs investigations into performance complaints that had been made about [Officer] Haferman very effectively." [Doc. 86 at 5 (citing [Doc. 88 at 22])].

7

11; Doc. 96 at 1–3]; (2) Mr. Corsentino's opinions are not relevant to Officer Haferman's

probable cause determination, [Doc. 86 at 12–13; Doc. 96 at 3–5]; and (3) Mr. Corsentino

offers improper legal opinions that invade the province of the Court and the jury, [Doc. 86

at 13–15].  The Court turns to each of these criticisms below.[7]

*Reliability*.  The Court's role as gatekeeper functions to "ensure that any and all

scientific testimony or evidence admitted is not only relevant, but reliable."  *United States

v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quotation omitted).  "Under Rule 702,

where the expert testimony is non-scientific, 'reliability depends heavily on the knowledge

and experience of the expert, rather than the methodology or theory behind it.'"  *United

States v. Medina*, No. 23-cr-00049-PAB-3, 2025 WL 873022, at *3 (D. Colo. Mar. 20,

2025) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)).  If an

expert relies primarily on his experience in forming his opinions, the expert "must explain

how that experience leads to the conclusion reached, why that experience is a sufficient

basis for the opinion, and how that experience is reliably applied to the facts."  *United

States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid.

702, advisory committee's note to 2000 amendments).  The Supreme Court has held that

---

[7] While the City also argues that the Corsentino Report offers "conclusory statements" regarding supervisor oversight, red flags, performance reviews and feedback of Officer Haferman, and maintenance of ethical standards, without identifying any specific opinions.  [Doc. 86 at 5 (citing [Doc. 88 at 11, 18, 20])].  In doing so, the City fails to comply with the Court's Civil Practice Standards, which require that "[a]ll motions filed under Rule 702 shall . . . specify, with particularity, the opinion(s) that the moving party seeks to exclude and the specific ground(s) on which each opinion is challenged, e.g., relevancy, sufficiency, or methodology."  *See* NYW Civ. Practice Standard 7.1C(b). Nevertheless, these general concerns are subsumed by the Court's analysis below.

a district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

The City argues that "[n]o citation or identification of 'long-accepted standards,' [regarding supervision in policing] however, is ever identified." [Doc. 96 at 2]. This Court concludes, as Judge Gallagher did, that such argument is misleading. *Elias v. City of Fort Collins*, No. 23-cv-01343-GPG-KAS (D. Colo.), ECF No. 14 at 6. Plaintiff highlights that Mr. Corsentino relies on standards that are explicitly discussed in the Corsentino Report. [Doc. 93 at 9]. Mr. Corsentino indicates that he reviewed the FCPS Policy Manual and Colorado Revised Statutes on relevant issues. [Doc. 88 at 6]. Mr. Corsentino's citation to Colorado Revised Statute § 24-31-902 identifies the standard that a "peace officer shall wear and activate a body-worn camera . . . when responding to a call for service [. . .] or during any interaction with the public initiated by the peace officer." [*Id.* at 13 (quoting Colo. Rev. Stat. § 24-31-902(1)(a)(II)(A))]. Mr. Corsentino further discusses the standards set out in § 24-31-902, *see* [*id.*], highlights when and how a "peace officer's employer shall impose discipline," and summarizes what is required under Colorado statutes regarding police officers' interactions with the public, [*id.* (citing Colo. Rev. Stat. § 24-31-902)]. Under "Supervisory Oversight," Mr. Corsentino also cites the American Law Institute's statement regarding the duties of supervisors, which indicates that "supervisors play a direct and influential role in guiding, reviewing, and approving officer activity" and "observe officer conduct to see how officers perform (including reviewing body-camera and in-car-camera footage); provide formal and informal feedback and evaluation to officers and employes; [and] review and approve arrests." [*Id.* at 10]. With respect to expected training protocols, in the section entitled

"Maintaining Ethical Standards in Law Enforcement," Mr. Corsentino cites the International Association of Chiefs of Police ("IACP"). [*Id.* at 21]. Mr. Corsentino identifies the IACP's standard that "[s]upervisors and executives must move beyond mere admonishments about ethics." [*Id.*]. Mr. Corsentino further cites FCPS policy, which states that "[s]upervisors shall ensure that [mobile audio/video devices] assigned to their officers are in working order and the officer using the [mobile audio/video device] has been properly trained." [*Id.*].

While courts are hesitant to find testimony reliable when an expert provides no sources or experience, the standards upon which Mr. Corsentino relies are clearly identified. *Cf. United States v. Rodella*, No. 14-cr-02783-JB, 2014 WL 6634310, at *22 (D.N.M. Nov. 19, 2024) (excluding expert testimony as unreliable when the proffered expert when the national practices the expert relied upon were not "written somewhere" and instead were "no more than [the expert's] personal opinions about what should be the practice"); *Robbin v. City of Santa Fe*, No. 11-cv-00879-JP-RHS, 2013 WL 12146533, at *3 (D.N.M. Jan. 23, 2013) (finding that expert testimony from an individual with law enforcement, public safety, and policing was reliable, even absent citations to particular guidelines, because he "review[ed] the facts, appl[ied] his education and training to the facts in order to identify any issues, and then appl[ied] rules or standards he [was] familiar with to those issues in order to formulate an opinion").

***Relevance.*** Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Tenth Circuit has stated that evidence is relevant if it "logically advance[s] a material aspect of the case"

and is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations omitted). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough to ignore what is unhelpful in its deliberations." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (quotation omitted).

The City argues that Mr. Corsentino's opinions fail to provide an identifiable nexus between Mr. Corsentino's criticism of FCPS and Officer Haferman's probable cause determination and thus his opinions are irrelevant. [Doc. 86 at 12–13; Doc. 96 at 3–5]. The City contends that Mr. Corsentino's testimony "risks impermissibly establishing liability based on respondeat superior, without establishing an underlying constitutional violation." [Doc. 86 at 13]. The City's arguments are misplaced at best. As Plaintiff points out, Officer Haferman's probable cause determination is not the subject of the Corsentino Report; instead, Mr. Corsentino plans to testify about information and context pertaining to failure to train and supervise. [Doc. 93 at 10–12]. Mr. Corsentino's opinions go to Plaintiff's *Monell* claims for failure to supervise or train. [Doc. 45 at ¶¶ 190–96, 208–16].

Officer Haferman's supervisors' training and supervision of him and others amounts to "a material aspect of the case" as to the *Monell* claims and is therefore relevant. *See Gutierrez de Lopez*, 761 F.3d at 1136; *Ellis v. Hobbs Police Dep't*, 472 F. Supp. 3d 1087, 1095 (D.N.M. 2020) (finding that an expert's opinions on whether a police department's "actions fell below generally accepted police custom and practice" were admissible in a discrimination and retaliation suit because such "opinions on deviation

from [police] standards of practice appear[ed] to be highly relevant" and would provide the jury with an "accurate view of how a reasonable police department and supervisors should act"). The Court respectfully finds that Mr. Corsentino's opinions about Seargeant Heaton and Corporal Bogosian's supervisory conduct are sufficiently relevant in this case. *Cf. Rodella*, 2014 WL 6634310, at *25 (excluding an expert when he sought to testify as to whether an officer's conduct fell below national police standards because such testimony was irrelevant in determining whether the officer used excessive force).

***Improper Legal Opinions.*** The City argues that Mr. Corsentino's opinion offers an improper legal opinion that effectively instructs the jury as to what standard the City should be held to with respect to municipal liability, relying on *Specht* for the principle that a "witness cannot be allowed to give an opinion on the question of law." [Doc. 86 at 13–15 (quoting *Specht*, 853 F.2d at 807)]. However, as Plaintiff highlights, the City's reliance on *Specht* is misplaced. [Doc. 93 at 12]. In *Specht*, the Tenth Circuit stated that the trial court should not have admitted an attorney to testify as an expert regarding legal conclusions because such testimony would interfere with the judge's role as the "sole arbiter of the law" and would not help the jury. 853 F.2d at 807. Importantly, the Tenth Circuit stated, "[t]he line we draw here is narrow. We do not exclude all testimony regarding legal issues." *Id.* at 809.

Here, to the extent that the City is concerned that Mr. Corsentino will be instructing the jury with respect to what Colorado law requires police to do with respect to body-worn cameras, this Court will not permit Mr. Corsentino to explain Colorado law. But he may testify about ordinary customs and practices within the field of policing as they pertain to body-worn camera use, and he may briefly reference Colorado statutes if asked from

where those customs and practices derive.  Consistent with this principle, Mr. Corsentino may not tell the jury what law to apply or what result to reach, but he may instead offer opinions regarding whether Officer Haferman's supervisors met those standards.  *See* [Doc. 88].

As to Mr. Corsentino's opinions regarding the general expectations for police supervisors, [*id.* at 10], and ultimately the opinion that the City failed to adhere to minimal supervisory standards, *see* [*id.* at 22 ("The series of incidents involving Officer Haferman's unlawful arrests, ethical violations, and inaccurate reporting underscore fundamental challenges within the FCPS, particularly in areas of oversight, accountability, and adherence to best practices.")], the City argues that Mr. Corsentino opines as much "without consideration of deliberate conduct, causal nexus, or even identification of a custom, policy or practice," [Doc. 86 at 13–14; Doc. 96 at 4–5].  This Court respectfully disagrees.  The Court will instruct the jury as to the proper constitutional standard to which the City is to be held.  *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1306 (10th Cir. 2010) ("[A] trial court is obligated to correctly instruct the jury on the law applicable to the case." (quotation omitted)).  Because Mr. Corsentino's opinions regarding the City's training protocols do not purport to express whether the City's conduct was constitutional or not, *see* [Doc. 88], such testimony does not offer an improper legal opinion regarding an ultimate issue, *see Ornelas v. Lovewell*, No. 11-cv-02261-JAR-KMH, 2013 WL 3271016, at *7 (D. Kan. June 27, 2013) (admitting expert testimony "about police standards and procedures, including the training and protocols provided to law enforcement officers" but excluding any testimony "as to the ultimate issue in th[e] case"), *aff'd*, 613 F. App'x 718 (10th Cir. 2015).

Ultimately, the City's arguments regarding Mr. Corsentino's testimony as a whole go to the weight of the testimony, rather than its admissibility, which is a question for the jury to address.  *Hertz v. Luzenac Am., Inc.*, No. 04-cv-01961-LTB-CBS, 2011 WL 1480523, *4 (D. Colo. April 19, 2011) ("The court's 'gatekeeping' role favors admissibility of expert testimony when it is reliable and relevant, but any issue of credibility or weight of the expert's testimony belongs to the trier of fact.").  Importantly, a trial court is not intended to replace the adversary system, and ""[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.

Accordingly, the City's Motion to Strike Corsentino is respectfully **DENIED**.

## II.    Motion to Exclude Platt

Plaintiff has endorsed Dr. Platt as a retained expert in the fields of impaired driving detection, law enforcement policy and procedures, and law enforcement training regarding the same.  *See* [Doc. 87-1; Doc. 95 at 3].  Dr. Platt reviewed the record of this case, including Officer Haferman's body-worn camera footage from Mr. Sever's arrest and Officer Haferman's training record, and then wrote the Platt Report.  [Doc. 87-1 at 23].  He expressly states that his opinions are based on the standards established by the National Highway Traffic Safety Administration ("NHTSA"), the International Association of Chiefs of Police ("IACP"), and his own training and experience, including as a former certified police officer, master police officer, field training officer, and law enforcement training program and instructor.  [*Id.* at 23–24].

In the Motion to Exclude Platt, Officer Haferman does not challenge Dr. Platt's qualifications or field of expertise in his instant Motion to Exclude Platt.  *See* [Doc. 87]. But Officer Haferman argues that the Court should exclude several of Dr. Platt's opinions, because:  (1) Dr. Platt's testimony usurps the role of the jury because it interprets facts, [*id.* at 3–5; Doc. 103 at 2–4]; (2) Dr. Platt's opinions about Officer Haferman's credibility are improper because they exceed the scope of his knowledge, [Doc. 87 at 5–6; Doc. 103 at 4]; (3) Dr. Platt offers improper legal conclusions about whether probable cause existed and therefore invades the province of the jury, [Doc. 87 at 6–7; Doc. 103 at 5–6]; (4) Dr. Platt is not qualified to discuss Plaintiff's medical conditions, the impact of Gabapentin, the effect of marijuana, and Drug Recognition Expert ("DRE") training, enforcement, procedures, and detection, [Doc. 87 at 8–9; Doc. 103 at 6–7]; and (5) Dr. Platt's testimony attacking or interpreting the NHTSA Manual is irrelevant to the issues of whether Officer Haferman administered field sobriety tests and whether Plaintiff indicated signs of impairment, [Doc. 87 at 9–10; Doc. 103 at 8–9].

The Court addresses each of Officer Haferman's arguments by category: (1) opinions interpreting body-worn camera footage; (2) opinions related to Officer Haferman's credibility and conduct; (3) opinions related to probable cause; (4) opinions regarding medical conditions and the impact of substances; and (5) opinions related to the NHTSA Manual.[8]

---

[8] Plaintiff also argues that Officer Haferman's arguments are better suited for a motion in limine.  [Doc. 95 at 4].  While this Court agrees that these arguments may also be appropriate for motions in limine, this Court resolves them in the context of the instant Motion to Exclude Platt in case such resolution impacts the pending dispositive motions.

## A.    Opinions Interpreting Body-Worn Camera Footage

If "expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020); *see also United States v. Garcia*, 793 F.3d 1194, 1212 (10th Cir. 2015) (if the jury is "every bit as qualified to analyze" the evidence as the expert, then "the expert provides no added value" (quotation omitted)).

Officer Haferman argues that Dr. Platt should be precluded from testifying as to observations or interpretations of the body-worn camera footage and the interaction between Plaintiff and Officer Haferman because such testimony usurps the role of the jury. [Doc. 87 at 3–5; Doc. 103 at 2–4]. Specifically, Officer Haferman seeks to exclude the following opinions of Dr. Platt:

- Any testimony as to Plaintiff having pre-existing brain and knee injuries, including alleged traumatic brain injury ("TBI").

- Bullet point "apparent observations" contained in the "Personal Contact" section, including:

    o  Mr. Sever appears to be an elderly gentleman;

    o  Mr. Sever already has his window rolled down when [Officer] Haferman approaches and is anticipating the request for his driver's license, retrieving it from his wallet;

    o  Mr. Sever uses manual dexterity to normally and promptly retrieve his license from his wallet, and he hands it to [Officer] Haferman without issue;

    o  [Officer] Haferman divides Mr. Sever's attention by asking him questions while Mr. Sever gets his proof of insurance from a Ziplock bag inside his glove compartment, Mr. Sever answers the questions appropriately while doing this task;

    o  Mr. Sever's speech is not slurred;

    o  Mr. Sever utilizes more manual dexterity adeptly and efficiently to quickly locate and hand his proof of insurance to [Officer] Haferman;

    o  At the time Mr. Sever has handed this document to [Officer] Haferman, [Officer] Haferman has not even needed to prompt him for those documents (Mr. Sever provided them without being asked);

    o  [Officer] Haferman then asks for Mr. Sever's registration, Mr. Sever locates it and gives it to him;

    o  Mr. Sever has to pause several times to cough; he may be sick or not feeling well;

    o  Mr. Sever covers his mouth each time he coughs;

    o  [Officer] Haferman hands some of the documents back to Mr. Sever and Mr. Sever looks normal, at ease, and unimpaired in returning the documents to the bag and console where he originally got them from; and

    o  There are no furtive or suspicious movements on Mr. Sever's part, and no open containers or drug paraphernalia visible inside the vehicle.

[Doc. 87 at 4 (citing [Doc. 87-1 at 23, 26])].   Officer Haferman also seeks to exclude:

- Factual observations regarding Plaintiff's exit from the vehicle.

- Narration of the conversation between Plaintiff and [Officer Haferman] captured by body-worn camera footage.

- Any testimony related to interpretation of Plaintiff's conversation with Officer Haferman about use of a mouthwash or a vape pen.

[*Id.* (citing [Doc. 87-1 at 28–30])].   Officer Haferman argues that such testimony is not based on specialized knowledge that Dr. Platt possesses and instead, Dr. Platt interprets facts about what Officer Haferman believed or knew, what Plaintiff did or did not say, and what the body-worn camera footage shows.   [*Id.* at 3–5; Doc. 103 at 2–4].   Therefore, Officer Haferman argues, such testimony would invade the province of the jury by usurping its fact-finding function.   [Doc. 87 at 5].

Plaintiff argues that Dr. Platt offers "unobjectionable statements" regarding what he saw on the body-worn camera footage that are relevant because they impact Officer "Haferman's actions, investigation, and arrest decision." [Doc. 95 at 6]. He also notes that Officer Haferman may dispute these opinions on cross-examination. [*Id.*]. With respect to factual observations about Plaintiff's exit from the vehicle, narration of the conversation between Plaintiff and Officer Haferman, and any interpretation of Plaintiff's conversation with Officer Haferman, Plaintiff argues that these are "facts viewable on video" that are relevant to Dr. Platt's opinions and that these facts will assist the trier of fact in determining if Officer Haferman's behavior complied with relevant standards. [*Id.* at 6–7]. Plaintiff again asserts that such disputes are appropriate for cross-examination, not exclusion. [*Id.* at 7].

***Factual Observations From Body-Worn Camera Footage.*** As an initial matter, "a jury is capable of assessing for itself" what the body-worn camera footage shows and what it may mean in the context of the case. *See Sanderson*, 976 F.3d at 1173 (quotation omitted); *Martinez v. CorrHealth, Pro. Ltd. Liab. Co.*, No. 1:22-cv-00288-WJ-SCY, 2023 WL 8095531, at *6 (D.N.M. Nov. 21, 2023) (excluding expert testimony when expert was "not a forensic video examiner—and such testimony appears to be mere speculation on what he sees or what he assumes was said" in the footage (emphasis omitted)). A juror requires no expertise to view a video and is fully capable of viewing and assessing what a video shows. *See Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders*, No. 16-cv-01094-JTM, 2018 WL 5962876, at *30 n.10 (D. Kan. Nov. 14, 2018) ("[T]o the extent [the expert] is simply stating his subjective impression of what he sees in the video, the factfinder could do the same.").

However, Dr. Platt may testify about his observations from the body-worn camera footage insofar as they relate to his opinions about whether Officer Haferman's conduct conformed to the applicable standards for conducting SFST.  For example, Dr. Platt's observations regarding Mr. Sever's exit from the vehicle inform his opinions regarding whether Officer Haferman's conduct was consistent with the NHTSA Manual.  *See* [Doc. 87-1 at 28–29 (laying out the NHTSA Manual guidance on exit sequence)].  Dr. Platt may also rely on his experience to state that it is his opinion that "Mr. Sever can be seen on video executing a normal and unimpaired exit sequence."  [*Id.* at 28].  While a jury is capable of viewing and assessing the footage for itself in a general manner, *Sanderson*, 976 F.3d at 1173, the jury is unlikely to have knowledge of the NHTSA Manual guidance on what an police officer show be alert to in order to "provide important evidence of impairment" or have lay knowledge of what a typical exit sequence should look like, *see* [Doc. 87-1 at 28]; *Davies v. City of Lakewood*, No. 14-cv-011285-RBJ, 2016 WL 614434, at *2 (D. Colo. Feb. 16, 2016) ("[A] lay juror is unlikely to have more than a vague notion of the standards applicable to police officers without the testimony of a qualified expert.").

Similarly, to the extent that Dr. Platt relied on Mr. Sever's medical history disclosures to conclude that Officer Haferman's reliance on the Horizontal Gaze Nystagmus ("HGN") testing is contradicted by the standards set forth in the NHTSA Manual because HGN is not a useful tool for detecting impairment in the brain-injured population, *see* [Doc. 87-1 at 29–30], or that the walk and turn and one-legged stand were inappropriate tests because they would have been difficult for a 74-year-old man to perform even sober, *see* [*id.* at 32], Dr. Platt may testify as to his observations of Mr. Sever's statements from the body-worn camera video and how Officer Haferman's

reactions to those disclosures did or did not conform to standards applicable to police conducting DUI stop and/or SFSTs.

But Dr. Platt cannot characterize Mr. Sever's conduct.  For instance, Dr. Platt is not permitted to bolster Mr. Sever by opining that Mr. Sever "exercises good judgment in selecting this side street as a safe location to stop.  He executes the turn and parks on the side of the road perfectly."  [*Id.* at 25].  He may also not opine that "[a]nd not only is 32 mph a safe and appropriate speed to go in a 40 mph zone, but *when there is a police officer who has just popped out and begun following you*, this is a driving behavior that tends to indicate a driver who is alert to his surroundings and unimpaired."  [*Id.*].  While the Court does not identify every single objectionable statement reflected in the Platt Report, Defendants may make contemporaneous objections as appropriate at trial.

###### B.    Opinions Related to Officer Haferman's Credibility and Conduct

Moreover, when Dr. Platt is simply testifying as to his interpretation of the body-worn camera video to question Officer Haferman's demeanor or attitude, he will not be permitted to do so.  It is well settled that "the credibility of another is not an appropriate subject for expert opinion testimony."  *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014); *see Chesapeake & O. Ry. Co. v. Martin*, 283 U.S. 209, 216 (1931) ("We recognize the general rule . . . that the question of the credibility of witnesses is one for the jury alone.").  Opinions on witness credibility "encroach[] upon the jury's vital and exclusive function to make credibility determinations, and therefore do[] not 'assist the trier of fact' as required by Rule 702."  *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (quoting Fed. R. Evid. 702).

Officer Haferman contends that Dr. Platt's opinions pertaining to Officer Haferman's credibility or state of mind should be excluded because they evaluate witness credibility. [Doc. 87 at 5–6; Doc. 103 at 4]. Specifically, Officer Haferman asks the Court to exclude the following:

- Statement that "[a]s for [Officer] Haferman stating there was a 'faint odor of an unknown alcoholic beverage,' this cannot be verified or disproved by the video, but Mr. Sever's subsequent 0.00 [Preliminary Breath Test ("PBT")] reading certainly tends to suggest [Officer] Haferman was also not being truthful about this claimed observation."

- Statement that "[l]astly, as for [Officer] Haferman's claim that Mr. Sever had 'slow speech and his body behavior was slowed at times,' this is belied by the video."

- Statement that "[Officer] Haferman not only ignores all the evidence of Mr. Sever's non[-]impairment in Phases One and Two, but in his fixation to proceed to Phase Three, he fails to utilize Phase Two for its intended purpose: gaining enough definitive evidence of possible alcohol/drug impairment to justify any continued detention of the driver. [Officer] Haferman's behavior and decision-making here to me suggests an impatient and impulsive officer with little respect for the civil liberties that are affected by his extended detentions."

- Statement that "[Officer] Haferman appeared to struggle to understand why the PBT showed any alcohol at all."

[Doc. 87 at 5–6 (citing [Doc. 87-1 at 26–28, 33])]. Plaintiff agrees that witness credibility is an improper subject for expert testimony. [Doc. 95 at 5]. However, Plaintiff responds that Dr. Platt's opinions reflect his observations regarding inconsistencies he observed between the body-worn camera footage and Officer Haferman's written reports, evidence, accepted police policies, and/or Officer Haferman's training. [*Id.* at 8].

Dr. Platt may testify factually about Mr. Sever's and Officer Haferman's behavior during the arrest insofar as such facts go to Dr. Platt's opinions as to whether Officer Haferman complied with the NHTSA Manual guidance or other objective policing standards with respect to the assessment of driver impairment. *See, e.g.*, [Doc. 87-1 at

28].  However, Dr. Platt may not opine that Officer Haferman's claim that Mr. Sever had slow speech and his body behavior was slowed at times "is belied by the video" or that "his speech speed and his behavior speed appear within the realm of normal/expected for someone of *any* age, but they appear particularly ordinary (if not slightly above average) for someone of his advanced age."  [*Id.* at 28].  Nor may he unabashedly offer that "it [is] important to note" the differences in Officer's Haferman's assessment of Mr. Sever's driving speed "as it relates to Haferman's credibility" because "if he wants to make impairment hay out of Mr. Sever not going the exact speed limit, he should be honest about the speed Mr. Sever was going."  [*Id.* at 25].

Furthermore, Dr. Platt's characterization of any inconsistencies to impute a subjective state of mind to Officer Haferman is impermissible.  For instance, Dr. Platt's opinion that "[Officer] Haferman was also not being truthful" about the faint odor of alcohol, [*id.* at 27], goes directly to Officer Haferman's credibility and is not permitted, *see Hill*, 749 F.3d at 1260; *see also McCullon v. Parry*, No. 18-cv-00469-NYW, 2021 WL 4947237, at *7 (D. Colo. June 23, 2021) (excluding expert opinion that stated that an officer "failed to prepare an accurate and reliable after-action report" and "knowingly submitted a false report").  Similarly, Dr. Platt's opinion that "[Officer] Haferman appeared to struggle to understand why the PBT showed any alcohol at all" is speculation that is not supported by any specialized knowledge or objective standards.  *See* [Doc. 87-1 at 33]; *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000) ("It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (expert opinion must be based on "facts which enable [him] to express a reasonably accurate conclusion as

opposed to conjecture or speculation"). Dr. Platt's conclusory opinions regarding "[Officer] Haferman's behavior and decision-making," [Doc. 87-1 at 28], are attempts to impugn his credibility that are simply not appropriate, *Hill*, 749 F.3d at 1260 ("[T]he credibility of another is not an appropriate subject for expert opinion testimony.").

### C.    Opinions Related to Probable Cause

Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Historically, witnesses could not give their opinion or conclusions on "an ultimate issue of fact" because such testimony would "usurp[] the function or invades the province of the jury." *Vondrak v. City of Las Cruces*, No. 05-cv-00172-JB-LAM, 2009 WL 3241555, at *10 (D.N.M. Aug. 25, 2009). However, the modern Federal Rules of Evidence reflect that the common-law ultimate-issue rule has been abolished. *See United States v. Smith*, 156 F.3d 1046, 1054 (10th Cir. 1998). The Tenth Circuit has set forth certain parameters for opinions that touch on an ultimate issue. *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25, of Adair Cnty.*, 936 F.2d 472, 476 (10th Cir. 1991). For example, "an expert may not state legal conclusions drawn by applying the law to the facts." *Id.* Under Rule 704, the trial court must "distinguish [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion." *United States v. Perkins*, 470 F.3d 150,158 (4th Cir. 2006) (quotation omitted and alterations in original).

"Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Ray v. N.M. State Police*, No. 20-cv-00127-

JMC-GJF, 2021 WL 1169710, at *3 (D.N.M. Mar. 26, 2021) (quoting *United States v. Valenzuela*, 209 F.3d 1179, 1185 (10th Cir. 2000)).  "Using an objective standard, the court asks 'whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer.'"  *Id.* at *4 (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002)).

Officer Haferman argues that Dr. Platt's opinions contain "inadmissible 'findings'" that constitute legal conclusions.  [Doc. 87 at 6–7].  Specifically, Officer Haferman seeks exclusion of the following:

- The entire section titled "The Arrest Decision."

- The entire section titled "Conclusion."

- Statement that "[i]n this matter, all the reliable evidence available to [Officer] Haferman made clear that Mr. Sever was not impaired or intoxicated.  Under those circumstances, no reasonable officer could have concluded that probable cause existed to arrest him for DUI."

- Statement that "[h]ere, there was not probable cause to arrest Mr. Sever for [DUI].  No reasonable officer in [Officer] Haferman's position could have reasonably believed that there was probable cause to arrest Mr. Sever for Driving Under the Influence.  The totality of the circumstances at the time of arrest indicated Mr. Sever was not impaired by any substance."

[*Id.* (citing [Doc. 87-1 at 23–24, 33–34])].  Officer Haferman argues that Dr. Platt's opinion as to whether probable cause existed invades the province of the jury.  [*Id.* at 6–7; Doc. 103 at 5–6].  Plaintiff responds that Dr. Platt's opinion relies on the facts of the case and his specialized training and therefore Dr. Platt is entitled to testify as to whether probable cause existed to arrest Mr. Sever as long as "provides his basis and reasoning for how he arrived at such an opinion."  [Doc. 95 at 8–10].  Plaintiff argues that the jury can weigh Dr. Platt's opinion and the underlying basis for the opinion when deciding whether a reasonable officer in Officer Haferman's position would have believed he had probable

24

cause.  [*Id.* at 10].  He also asserts that expert opinions always touch upon the ultimate legal issues in a case and this is not grounds for exclusion.  [*Id.*].

**Conclusion Section.**  Experts may testify as to whether an officer followed accepted police standards.  *See Allen*, 119 F.3d at 842–43 (affirming the admission of expert testimony when the expert testified that "the officers' actions were reckless and totally contrary to proper police practices").  Dr. Platt's conclusion states that "[i]f [Officer] Haferman had been following his training and considered all of the evidence he had obtained . . . he would have never arrested and charged Mr. Sever with DUI" and that "there is no reasonable and reasonably-trained officer that would make this arrest decision."  [Doc. 87-1 at 34 (emphasis omitted)].  Dr. Platt's conclusion further states that Officer Haferman did not act in line with his training.  [*Id.*].  To the extent Dr. Platt's testimony discusses whether Officer Haferman complied with the training he received, such testimony is admissible.  *See Allen*, 119 F.3d at 842–43.  However, to the extent Dr. Platt's testimony asserts that no reasonable officer would have arrested Mr. Sever, such testimony goes to the ultimate issue of probable cause, which is an objective standard. *See Ray*, 2021 WL 1169710, at *3.  Accordingly, Dr. Platt will <u>not</u> be permitted to testify as to whether a reasonable officer would have arrested Mr. Sever.

**Probable Cause.**  "The question of probable cause is a mixed question of law and of fact."  *Stewart v. Sonneborn*, 98 U.S. 187, 194 (1878) (quotation omitted).  Therefore, Dr. Platt's testimony as to whether Officer Haferman had probable cause to arrest Mr. Sever presents an opinion on a mixed question of law and fact.  *United States v. Hauk*, 412 F.3d 1179, 1185 (10th Cir. 2005) (determination of whether officers had probable cause is a mixed question of law and fact).  Dr. Platt's testimony in the section entitled

25

"The Arrest Decision" states that based all of "the evidence available to Officer Haferman . . . no reasonable officer in [Officer] Haferman's position would have believed there existed probable cause to arrest Mr. Sever for DUI." [Doc. 87-1 at 33]. This type of testimony is not permitted. *See United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) ("However, an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment."); *see also Montoya v. Ramos*, No. 1:13-cv-00773-WJ-SCY, 2017 WL 3425675, at *2 (D.N.M. Aug. 9, 2017) ("[T]o the extent Plaintiff's counsel intends to have [the expert] testify that Defendants did not possess reasonable suspicion or probable cause, such testimony will be excluded."); *see also Cameron v. City of New York*, 598 F.3d 50, 61–62 (2d Cir. 2010) ("the issue of whether or not probable cause to arrest exists is a legal determination that is not properly the subject of expert opinion testimony" (quotation omitted)). Accordingly, Dr. Platt will <u>not</u> be permitted to testify as to whether Officer Haferman had probable cause to arrest Mr. Sever.

### D. Opinions Regarding Medical Conditions and Impact of Substances

The Court recognizes that "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011). A court "should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." *Id.*; *see also* Fed. R. Evid. 702 (an expert may be qualified under Rule 702 on a number

of grounds, including knowledge, training, and education). A witness may acquire expertise on a subject based on experience in that field. *See Medina-Copete*, 757 F.3d at 1104 ("In *Garza*, we held that 'police officers can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters.'" (quoting *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009))). "But witnesses relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (quotation omitted and alteration in original)

Officer Haferman contends that certain portions of Dr. Platt's opinion regarding Plaintiff's medical conditions, the impact of Gabapentin, the effect of marijuana, and testimony related to DRE training, enforcement, procedures, and detection should be excluded because Dr. Platt was not endorsed as a medical expert and is not qualified to offer such opinions. [Doc. 87 at 8–9; Doc. 103 at 6–7]. Specifically, Officer Haferman seeks to exclude the following:

- Any testimony as to Plaintiff's alleged medical conditions, including knee-injuries and/or TBI . . ., or how these alleged medical conditions may have influenced or affected Plaintiff's performance on the standardized field sobriety tests, specifically:

  o Statement that "Mr. Sever tells [Officer] Haferman he has a brain injury from a severe collision that continued to cause present day cognitive symptoms, and this assertion appears quite corroborated by the disability-based prior license cancellation that [Officer] Haferman saw in [Mr.] Sever's driver history (and asked him about)."

  o Statement that "Mr. Sever is 74 years old. So are his bones, muscles, and organs. He informed [Officer] Haferman that he suffered a severe brain injury years ago that was still causing him cognitive problems today."

- Any testimony as to Gabapentin, including alleged effect of Gabapentin on general public and/or Plaintiff.

- Any testimony as to impairing effects of marijuana on Plaintiff and general population, digestion times, legality of use.

- Any testimony related to DRE training, enforcement, procedures, detection, including testimony about training DRE professionals receive on Gabapentin.

[Doc. 87 at 8 (citing [Doc. 87-1 at 30, 31 n.4, 32])].

***Pre-Existing Conditions.*** Plaintiff argues Dr. Platt's opinion as to Plaintiff's pre-existing conditions are relevant facts of the case that Plaintiff shared with Officer Haferman during the arrest and which Officer Haferman will have the opportunity to dispute on cross-examination. [Doc. 95 at 6]. For the reasons set forth above, Dr. Platt may testify as to how Mr. Sever's pre-existing medical conditions that were disclosed to Officer Haferman should have impacted Officer Haferman's conduct according to standards applicable to police conducting DUI stop and/or SFSTs.

***Marijuana and Gabapentin.*** Plaintiff contends that "how a drug affects a person . . . and any medical conditions of a DUI suspect are required knowledge/training for law enforcement officers." [*Id.* at 11]. He observes that Dr. Platt has been endorsed as an expert in DRE, has nine years of experience in law enforcement, has decades of specialized training and experience in DUI and Driving While Intoxicated ("DWI") offenses, and has several certifications on the topics. [*Id.* at 10–11]. Indeed, Dr. Platt's curriculum vitae confirms that Dr. Platt has experience in law enforcement, specialized training, and DUI offenses, including being responsible for the training and management of the Texas Drug Evaluation and Classification Program and presenting on DRE. [Doc. 87-1 at 1–18, 23; Doc. 103-1]. In addition, Dr. Platt himself worked as a police officer, which lends support to his qualifications to opine on what officers are taught about the impact of Gabapentin and marijuana, as he indicates that such information is well within

28

a law enforcement officer's knowledge.    *See Medina-Copete*, 757 F.3d at 1104. Accordingly, Dr. Platt will be permitted to testify as to what DRE officers are taught about the effect of Gabapentin on individuals.

This Court comes to a different conclusion about Dr. Platt's opinions regarding marijuana, which appear to be untethered to any specific training or standard.  *See* [Doc. 87-1 at 30].  As a result, Dr. Platt will <u>not</u> be permitted to testify about the impact of marijuana generally or its impact on Officer Haferman's conduct.

### E.    Opinions Related to the NHTSA Manual

Officer Haferman contends that Dr. Platt's opinions attacking the NHTSA Manual or interpreting the NHTSA Manual should be excluded because they are irrelevant to the issue of whether SFSTs were administered to Plaintiff and whether Plaintiff showed signs of impairment.  [Doc. 87 at 9–10].  Specifically, Officer Haferman seeks to exclude the following:

- Any reference to consideration of exculpatory evidence.

- Any reference to "clues of sobriety."

- Any reference to "evidence of non[-]impairment."

- Any reference to "sobriety evidence."

- Any reference to neither the Number Count test nor the Finger to Nose test being part of the NHTSA SFST battery.

- Any reference to the opinion that field sobriety tests are not validated for subjects over 65 years of age.

[*Id.*]; *see* [Doc. 87-1 at 24–25, 28, 32–34].  Officer Haferman asserts that Dr. Platt may disagree with NHTSA teachings, but such disagreement is irrelevant to "whether a reasonable officer believed that probable cause existed as to Plaintiff's arrest for DUI."

[Doc. 87 at 9–10].  Plaintiff responds that (1) Dr. Platt's testimony in this regard is "relevant and advances a material aspect of the case" because the opinions are directly related to how officers are trained with respect to DUI arrests and (2) the jury may decide what is helpful or unhelpful in its deliberations.  [Doc. 95 at 11–13].

While this Court agrees that Dr. Platt cannot simultaneously endorse and attack the NHTSA Manual due to the substantial risk of confusion to the jury, this Court finds that Officer Haferman's request to exclude is too broad.  The NHTSA Manual is not the only source identified by Dr. Platt as setting forth standards for police officers conducting DWI stops and SFSTs.  *See* [Doc. 87-1].  And to the extent that Dr. Platt opines, based on his experience and knowledge, that officers are trained to consider both inculpatory and exculpatory information to assess whether SFSTs should be performed or to detect DWIs, he may do so—subject to any vigorous cross-examination by Defendants.

With respect to evidence of non-impairment or clues of sobriety, in general, this type of exculpatory evidence is generally well within a lay juror's common knowledge.  *See Linin v. Neff*, No. 2:15-cv-00298-JNP-PMW, 2017 WL 3841848, at *3 (D. Utah Sept. 1, 2017).  But to the extent that Dr. Platt testifies briefly about such evidence as it relates to his opinions regarding whether Officer Haferman complied with applicable standards, that evidence is permissible.  And finally, with respect to Officer Haferman's arguments that Dr. Platt's opinions about the reliability of certain SFSTs are irrelevant, this Court respectfully disagrees.  Some courts in the Tenth Circuit have been hesitant to admit expert testimony linking how an individual performs on an SFST to intoxication.  *See, e.g.*, *United States v. Hamilton*, No. 1:18-mj-02490-JCH-1, 2019 WL 3325264, at *5 (D.N.M. July 24, 2019) ("[B]ecause [the expert] could not offer expert testimony linking

performance on the [S]FSTs to intoxication, he testified as a layperson concerning Mr. Hamilton's coordination on the [S]FSTs."), *aff'd*, 813 F. App'x 347 (10th Cir. 2020). By the same token, Dr. Platt's opinion that <u>applicable standards</u> suggest that certain tests administered by Officer Haferman were unreliable, such testimony may be helpful to the jury. *Cf. Shearon v. Womack*, No. 3:15-cv-01061, 2017 WL 11476674, at *2 (M.D. Tenn. Dec. 12, 2017) (concluding with minimal analysis that Dr. Platt's testimony regarding SFSTs "was not relevant to whether a reasonable officer in the position of [the officer] would have believed that probable cause existed to arrest [the plaintiff] for driving under the influence"). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility . . . [t]he jury is intelligent enough to ignore what is unhelpful in its deliberations." *Gutierrez de Lopez*, 761 F.3d at 1136.

Having reviewed Dr. Platt's proposed testimony and the Parties' arguments, and based on the analysis contained herein, Officer Haferman's Motion to Exclude is respectfully **GRANTED in part** and **DENIED in part** to the extent outlined above.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    Defendant City of Fort Collins' Motion to Strike Plaintiff's Expert Dan Corsentino Pursuant to Fed. R. Evid. 702 [Doc. 86] is **DENIED**; and

(3)    Defendant Jason Haferman's Fed. R. Evid. 702 Motion to Exclude Parts of Exert Testimony of Plaintiff's Expert Witness Dr. Lance Platt [Doc. 87] is **GRANTED in part** and **DENIED in part**.

DATED:  September 23, 2025          BY THE COURT:

_____
Nina Y. Wang
United States District Judge